1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   WENDY L. ABANGAN,                    )      Case No.: C 05-1480 PVT
                                          )
13                  Plaintiff,            )      ORDER GRANTING IN PART AND DENYING
                                          )      IN PART PLAINTIFF'S MOTION FOR
14          v.                            )      SUMMARY JUDGMENT; DENYING
                                          )      DEFENDANT'S MOTION FOR SUMMARY
15   MICHAEL J. ASTRUE, Commissioner,     )      JUDGMENT; AND REMANDING MATTER
     Social Security Administration,      )      FOR FURTHER PROCEEDINGS
16                                        )
                    Defendant.            )
17   _____)

18          Pursuant to the Procedural Order for Social Security Review Actions, Plaintiff Wendy L.

19   Abangan ("Abangan") filed a motion for summary judgment.[1]  Defendant, the Commissioner of the

20   Social Security Administration ("Commissioner"), opposed the motion and filed a cross-motion for

21   summary judgment.  The parties have also filed supplemental briefs pursuant to this court's interim

22   order.  Both parties have consented to proceed before a United States Magistrate Judge.  Based on

23   the administrative record and the briefs and arguments presented,

24          IT IS HEREBY ORDERED that, for the reasons discussed herein, Abangan's motion for

25   summary judgment is GRANTED IN PART and DENIED IN PART; and Defendant's motion for

26   summary judgment is DENIED.

27   _____

28          [1]        The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

1    IT IS FURTHER ORDERED that this matter is REMANDED to Defendant for further

2    proceedings consistent with this opinion.

3

4    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

5    Abangan is a 44 year-old female (DOB 8/13/63), who was 36 years old at the alleged onset

6    date of disability (6/21/00).  (Tr. 156.)  She alleges she attended school through the seventh grade

7    and had several years of correspondence school.  (Tr. 174.)  Her past relevant work experience

8    consists of employment as a data input/retrieving clerk.  (Tr. 336-37.)

9    There are several notations in the record indicating that Abangan has a history of auditory

10   hallucinations.  (*See, e.g.,* Tr. 281, 297 & 305.)  Abangan first started experiencing depression in

11   about 1995.  (Tr. 215.)  She was treated with Elavil, but stopped after awhile.  *Id.*  The Elavil was

12   discontinued and she was started on Paxil.  *Id.*  In 1998 she went through a divorce that she was not

13   prepared for.  *Id.*

14   Abangan stopped working in June 21, 2000.  (Tr. 156.)  She received state benefits for

15   "workers compensation, public disability or black lung" for the period June 21, 2000 to June 27,

16   2001.  (Tr. 156)

17   In November of 2000 Abangan was hospitalized for attempted suicide (Tr. 219 & 281) after

18   the death of her best friend (Tr. 233, 281 & 304).[2]

19   Abangan continued to suffer from depression and possibly bipolar disorder.  (*See e.g.,*

20   Tr. 230-32, 281 & 299.)

21   Abangan applied for Social Security disability insurance benefits on August 20, 2001, based

22   on claimed disabilities of bipolar disorder, depression, thyroid disease and high blood pressure.

23   (Tr. 156.)  That application was denied on November 15, 2001.  After her request for reconsideration

24   was also denied, on February 15, 2002, Abangan requested a hearing by an Administrative Law

25   Judge ("ALJ").  (Tr. 143-46 & 147-48.)

26   The hearing was held on January 28, 2003.  (Tr. 318.)  Based on Abagan's testimony and

27   ───────────────

28       [2]    Two years later Dr. Narvaez noted on an intake assessment at Santa Clara County Mental Health that although Abangan had occasional suicidal thoughts, she never had any plan or attempt.  (Tr. 303, 305.)

1   counsel's statements at the hearing, it appears that the ALJ did not have all of the relevant medical

2   records before him. (Tr. 331.)  It also appears that the ALJ found at least one of the medical

3   evaluations ambiguous.  (Tr. 333-34.)

4          At the hearing before the Administrative Law Judge in this case Abangan admitted that she

5   had a drug problem in the mid-90s. (Tr. 324.)  Although Abangan repeatedly denied to medical

6   providers that she used any street drugs (*see, e.g.,* Tr. 216, 219, 281 and 288), she admitted to the

7   call center of  Santa Clara County Mental Health Clinic that she used crank on a regular basis in

8   1997-1998.  (Tr. 303, 305.)  At the hearing Abangan also admitted to a history of heavy drinking (Tr.

9   216), but testified that because of all her medications she could no longer "really drink" and that she

10  drank only occasionally at that time.  (Tr. 324.)  (The ALJ did not base his decision on these facts.)

11         On February 20, 2003 the ALJ rendered an unfavorable decision. (Tr. 115-27.)  The Appeals

12  Council denied Abangan's Request for Review.  (Tr. 63.)  Consequently, the ALJ's decision became

13  the Commissioner's final decision.  This action ensued.

14

15         **II.    LEGAL STANDARDS**

16         To qualify for disability benefits, a claimant must show that a medically determinable

17  physical or mental impairment prevents her from engaging in substantial gainful activity and that the

18  impairment is expected to last for a continuous period of at least twelve months (or result in death).

19  *See* 42 U.S.C. § 423(d)(1)(A).

20         A five-step sequential process is used to determine whether a claimant is "disabled." *See* 20

21  C.F.R. § 404.1520.  The first step is to consider whether the claimant is engaged in substantial

22  gainful activity.  If so, the claimant is not disabled.  If not, the Commissioner proceeds to step two.

23  The second step is to assess whether the claimant suffers from a "severe" impairment.  If not, the

24  claimant is not disabled.  If so, the Commissioner proceeds to step three.  The third step is to

25  examine whether the claimant's impairment or combination of impairments meets or equals an

26  impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1.  If so, the claimant is automatically deemed

27  disabled.  If not, the Commissioner proceeds to step four.  The fourth step is to determine whether

28  the claimant is capable of performing her past relevant work.  If so, she is not disabled.  If not, the

1    Commissioner proceeds to step five.  Finally, the firth step is to determine whether the claimant has

2    the residual functional capacity to perform any other substantial gainful activity in the national

3    economy.  If not, the claimant is disabled.  The burden lies with the claimant to establish steps one

4    through four.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  In step five, the burden

5    shifts to the Commissioner.  *Id.*

6        In social security disability cases the ALJ has an independent "'duty to fully and fairly

7    develop the record and to assure that the claimant's interests are considered.'"  *See Smolen v. Chater*,

8    80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

9    This duty extends to represented as well as unrepresented claimants.  *Id.*  The ALJ's duty to develop

10   the record fully is heightened where the claimant may be mentally ill, and thus unable to protect her

11   own interests.  *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) ("In cases of mental

12   impairments, this duty is especially important.")  If an ALJ needs to know the basis of a doctor's

13   opinion, this duty requires that he conduct an appropriate inquiry.  *See Tidwell v. Apfel*, 161 F.3d

14   599, 602 (9th Cir. 1998).  The ALJ may discharge this duty in several ways, including: subpoenaing

15   the claimant's doctors for additional records (or live testimony), submitting questions to the

16   claimant's doctors, continuing the hearing, or keeping the record open after the hearing to allow

17   supplementation of the record.  *Ibid.*; *see also, Smolen*, 80 F.3d at 1288.

18       In reviewing a denial of Social Security disability benefits, courts will set aside an ALJ's

19   decision only if that decision is based on legal error or the findings of fact are not supported by

20   substantial evidence in the record taken as a whole.  *Tacket v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir.

21   1999).  Substantial evidence is "more than a mere scintilla" but "less than a preponderance"; it is

22   "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

23   *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (citation omitted); *see also*

24   *Desrosiers v. Secretary of Health & Human Serv.,* 846 F. 2d 573, 576 (9th Cir. 1988).

25       While courts must look at the record as a whole, considering both evidence that supports and

26   that undermines the ALJ's findings, it is the ALJ's function to resolve conflicts in the evidence.  *See*

27   *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992).  However, even if  substantial

28   evidence supports the ALJ's factual findings, the decision must nonetheless be set aside if  the ALJ

1   applied improper legal standards in reaching the decision.  See *Benitez v. Califano*, 573 F.2d  653,
2   655 (9th Cir. 1978).

3        When a claimant demonstrates the existence of a condition that would cause some degree of
4   pain or dysfunction, the ALJ must articulate specific, convincing reasons for rejecting the  claimant's
5   subjective testimony regarding his pain and limitations.  *See, Fair v. Bowen*, 885 F.2d 597, 601-04
6   (9th Cir. 1989); *see also, e.g., Tonapetyan v. Halter*,  242 F.3d 1144, 1147-48 (9th Cir. 2001).  An
7   ALJ may not reject a claimant's statements regarding  her limitations merely because they are not
8   fully corroborated by objective evidence.  *See Bunnell v. Sullivan*, 947 F.2d 341, 343-45 (9th Cir.
9   1991).  "General findings are insufficient; rather, the ALJ must identify what testimony is not
10   credible and what evidence undermines the claimant's complaints."  *See Lester v. Chater*, 81 F.3d
11   821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

12        Courts may not affirm the decision of an ALJ on grounds upon which the ALJ did not rely in
13   reaching his decision.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

14

15   **III.    DISCUSSION**

16   **A.    The ALJ Failed to Fully and Fairly Develop the Record**

17        It is clear from statements on the record at the hearing before the ALJ that several of
18   Abangan's medical records were not in the administrative record.  (Tr. 331.)  Specifically, the record
19   did not contain the following records which, based on Abangan's testimony, there is reason to
20   believe exist: 1) records from the doctors who were going to Abangan's home to provide therapy;[3]
21   2) Dr. Minsky's records of Abangan's visits with him *after* intake; and 3) Dr. Thomas Powers'
22   records (Tr. 331).

23        Dr. Powers' records are particularly important in light of Abangan's testimony that
24   Dr. Powers was the doctor she was seeing the longest, and that he had her "on state disability for
25   bipolar."  (Tr. 331).  A November 29, 2000 notation in Dr. Linder's records indicates Abangan was
26   "on disability by Dr. Powers."  (Tr. 331).  And when Abangan first applied for social security

27

28          [3]      At the hearing Abangan's counsel offered to obtain these records, but apparently the ALJ
failed to take counsel up on her offer.

1   disability benefits she listed Dr. Powers as the psychiatrist who reported to her primary doctor,

2   Dr. Linder (Tr. 170), indicated she saw him regularly (Tr. 171), and that he was the one who

3   prescribed an antidepressant, Celexa, for her.  (Tr. 173).  Thus, Dr. Powers was her treating

4   psychiatrist, and his records would be the most probative of her mental status during some or all of

5   the claimed period of disability.[4]  The ALJ's failure to ensure the record included this treating

6   doctor's records constituted a failure to "fully and fairly develop the record."  The absence of these

7   documents from the record also casts doubt on the opinions of the consulting doctors who did not

8   have the benefit of reviewing them before reaching their conclusions.

9          It also appears that the ALJ found at least one of the medical evaluations ambiguous.

10  (Tr. 334.)  At the hearing, Abangan's counsel read portions from a psychiatric evaluation dated

11  12/16/02: "depressed and anxious, coherent – poor concentration and immediate recall, major

12  depressive –."  (Tr. 334.)  In response, the ALJ said "Well, I don't know whether she's saying that or

13  whether – I mean whether they're reporting what she said or whether they're actually making clinical

14  findings."  (Tr. 334.)  Most of the portions[5] of the document in question appear on their face to be a

15  statement of the examiner's clinical findings rather than Abangan's symptoms.[6]  Nonetheless, if the

---

17      [4]      The record indicates that Dr. Powers failed to respond to informal requests for his
18  records. (Tr. 250-62 & 331.)  There is no indication that either the ALJ or Abangan's counsel at the time
    subpoenaed his records.  Moreover, there is no indication that anyone asked for copies of these records
19  from Dr. Linder, despite the fact Abangan specifically stated in her application papers that these records
    could be obtained from Dr. Linder, because all of them were copied to him.  (Tr. 170.)

20      [5]      Counsel's recitation of "major depressive" appears to be from Section 8 of the document
21  which appears to be the examiner's "diagnostic formulation."  (Tr. 299.)

22      [6]      The relevant portion appears to read:

23  "7 MSE: Casually groomed.  Adequate personal hygiene [illegible], ambulatory &
    cooperative.  Mood depressed & anxious. [Illegible] approp – coherent, clear & goal
24  directed. Ø [illegible] Ø delusions. Poor concentration & immediate recall. Ø SH Ø EPS
    – [illegible] fair – Ø s/o [illegible, possibly 'violence']" (Tr. 299.)

25      At the top of the page there is what appears to be a  key to the numbered sections, which
26  indicates Section 7 is a record of a "mental status examination." This is consistent with the "MSE"
    designation at the beginning of the quoted section. (Tr. 299.)  The key indicates that Sections 2 and 3
27  are the "History of presenting illness" and "Relevant past psychiatric history" respectively. (Tr. 297-99.)
    Consistent with this, in Section 2 the examiner reports what the patient "said" and "claimed." (Tr. 297.)
28  Thus, read in context, it appears most likely that the notations in Section 7 are a record of the examiner's
    clinical observations rather than Abangan's self-reported symptoms (which were already noted in
    Section 2 of the document).  And on their face, the notations appear to be objective observations.

1    ALJ found the document ambiguous or did not understand it, he should have sought further

2    clarification from the examiner (unless the clarification would not change his opinion one way or the

3    other based on other substantial evidence in the record).

4

5        **IV.    CONCLUSION**

6        Abangan's depression is documented repeatedly in the notes of her primary treating

7    physician, Dr. Linder, during the period of, at a minimum, the twelve months from June of 2000

8    through June of 2001.  (Tr. 230-34.)   There are also references to her treating psychiatrist,

9    Dr. Powers, who it appears supported Abangan's claim for state disability benefits.  (Tr. 233 ("on

10   disability by Dr. Powers") & 331 ("he had me on state disability for bipolar")), but Dr. Powers

11   records were never obtained for the record.  Nor were any further records obtained from Dr. Minsky,

12   despite Abangan's testimony that she *had* continued to see him after the initial intake.  Because

13   significant medical records were missing from the record before the ALJ, remand is appropriate.

14       Before reaching a decision on remand, the ALJ must fulfill his duty to fully and fairly

15   develop the record by subpoenaing the missing records (or requiring Abangan's counsel to subpoena

16   the records),[7] and, if necessary for a full and fair review, obtaining either written clarification or oral

17   testimony from any physician who's records the ALJ finds ambiguous.

18       In light of this ruling, the court does not reach the other issues Abangan raised regarding the

19   ALJ's decision because the ALJ's findings may be significantly affected by his review of the missing

20   records.[8]

21   Dated: *4/8/08*

22                                          *Patricia V. Trumbull*

23                                          PATRICIA V. TRUMBULL
                                            United States Magistrate Judge

24

25

26       [7]    With regard to Dr. Powers' records, the court again notes that if they are not available
     directly from Dr. Powers, copies should be available from Dr. Linder.  If an informal request to
27   Dr. Linder is unsuccessful, a subpoena to Dr. Linder for Dr. Powers' reports may be necessary as well.

28       [8]    The court nonetheless encourages Defendant to review the issues raised by Abangan and
     this court to ensure that the proper standards are applied.